## KEELY *v.* WEIR *et al.*

(*Circuit Court, W. D. Tennessee.* January 22, 1889.)

1. JUDGMENT—RES JUDICATA—PARTIES AND PRIVIES—TAX-SALE.

If one who claims to be the beneficiary of a resulting trust in land, which has been purchased by a trustee in her own name, be not made a party to a bill filed by the devisees of the trustee to impeach the validity of a tax-sale, as against the purchaser of the tax-title, she is nevertheless bound by a decree in favor of the tax purchaser, because she is in privity with the trustee, or those upon whom the legal title has devolved, as they may file the bill in her behalf without making her a party in form, especially where her interest does not appear except by construction, and is only a secret trust, and more especially where the title impeached is a tax-sale upon an assessment against the ostensible owners.

2. TRUSTS—RESULTING TRUST—WILLS—DISCRETIONARY POWERS—LIFE-TENANT AS TRUSTEE.

Where a father's will left the property to his wife during widowhood for the purpose of educating the children, and to give to each his portion on marriage or coming of age, and with powers of management and sale, if the widow sell a part of the property, and purchase other land in her own name, no trust in that land results in favor of one of the children who has been by the mother's will denied all share in it, upon a bare allegation that the purchase

money was a part of the money realized by the sale of the father's land. In such a case the discretionary powers of the trustee, and the nature of the trust, are such that it cannot appear without a settlement of the entire trust that any part of the purchase money belonged to the cross-plaintiff setting up a resulting trust; and if the proper construction of the will be that the widow took a life-estate, with remainder over to the children, the result is more certainly the same, for the life-tenant is entitled to all uses, benefits, and profits, and the remainder-men only to the original *corpus*, their only equity being to secure and preserve that, but there is no equitable interest in the land as a resulting trust-estate.

3. EQUITY—STALE DEMAND.

A claim for a resulting trust in land purchased 50 years ago, and more than 40 years after the alleged defaulting trustee had died and devised the land in hostility to the supposed resulting trust, is a stale demand as against a purchaser from the devisees at a tax-sale.

In Equity.

Action by Thomas Keely against Sarah E. G. Weir and others, to quiet title and enjoin certain alleged wrongful acts.

*Wm. M. Randolph*, for plaintiff.

*James H. Malone*, for defendants.

HAMMOND, J. The plaintiff filed this bill in the state court to quiet his title and enjoin the defendants from certain acts interfering with his alleged possession of the property described by the bill. He sets out with fullness a former proceeding in the state courts, by which his title under a direct tax-sale made under the act of congress in that behalf was confirmed to him by the supreme court of the United States in the case of *Keely* v. *Sanders*, 99 U. S. 441. The defendants answered, denying the acts complained of by the bill, or explaining them as lawful to be taken in defense of their own title, and alleged possession, and, generally, denying the title of the plaintiff. They also filed a cross-bill, which, after removal to this court, they amended, by which they set up a title in themselves; that their claim is paramount, not only to the portion of the property described by the bill, but to all that the plaintiff acquired under his direct tax certificate; and they call upon him to account for the rents, or such portions of them as belong to cross-plaintiffs by reason of their joint ownership with him or the other defendants. And to this cross-bill the demurrer is filed.

Briefly, it may be stated that the devisees of Miriam L. Sanders, under her will,[1] recorded in Shelby county in Will-Book C, page 344, of date March 27, 1846, and made Exhibit A to this bill, commenced in October, 1866, the proceeding before mentioned as resulting in the judg-

---

[1] *Will of Miriam L. Sanders. March 27, 1846.*

*Item* 3. [Appoints executors.] *Item* 4. Directs sales of real estate, reinvestments in negroes, and their use, and how children shall live and go to school, etc., and how negroes shall be divided among children, and, when youngest child becomes of age, remaining real estate to be sold, and negroes purchased and divided, etc. As to Sarah [now Mrs. Weir] thus: "I wish my daughter Sarah to have one hundred dollars, after my debts are paid, as her portion of my estate." And this: "Then it is my desire that any portion of my estate of which they or either of them may die possessed shall be equally divided with the surviving children, as my daughter Sarah is provided for by her marriage; and the education I have given her I consider equivalent to the respective amounts I have bequeathed to my four children above named."

ment of the supreme court of the United States, in favor of plaintiff's United States tax-title; and that the defendant Mrs. Weir, a sister of theirs, mentioned in that will as having received her equivalent of the estate, and as a legatee of $100 only, was not a party to it, either as plaintiff or .defendant. By this cross-bill, by her proceeding in the state court, taken in defense of her claim of ownership, and by her denial of plaintiff's title, she sets up that she is not bound by that judgment of the supreme court of the United States, and finding this part of the property in the common, as she avers, and not in his actual possession, she has taken possession of it, and defends that possession by the acts alleged by the plaintiff to be acts of violence and fraudulent conspiracy, etc. She rests her title not on her mother's will, before mentioned, but on that of her father, Joel B. Sanders,[1] made in 1833, and also recorded in Shelby county, in Will-Book No. 1, page 56, and made Exhibit A to this cross-bill. Her construction of her father's will is that the property was given to her mother in trust for their children, herself included, with specific duties and powers therein enumerated, and that at most her mother had only a joint interest with the children, and held at least their shares of the estate upon the trusts aforesaid. And now she avers that her mother, in breach of this trust, sold her father's property, and with the proceeds, or a part thereof, purchased the property in controversy, fraudulently taking the title in her own name, claiming it as her own, and undertaking by her will to dispose of it to her brothers and sisters, wrongfully withholding from cross-plaintiff, Mrs. Weir, her share. She charges that a trust resulted in her favor; that she owns her share of the land under her father's will and as heir at law of certain of her brothers and sisters, who have died since her mother's decease, and this is the title she seeks to enforce by her cross-bill and amended cross-bill, in which she further avers that the United States direct tax commissioners refused to receive the direct tax assessed, except from the owner himself, and established a uniform rule to that effect, and would not permit an agent to pay the taxes; that cross-plaintiff and her co-tenants then resided in Texas, and had an agent here, who would have paid the United States direct tax if he had been permitted to do so,—thus bringing the attack upon the tax-title within the ruling of the Arlington Case, (*U. S.* v. *Lee,* 106 U. S. 196, 1 Sup. Ct. Rep. 240.)

The cross-bill bitterly denounces the plaintiff for taking this property un-

---

[1]*Will of Joel B. Sanders. July 24, 1833.*

*Item* 3. I will all of my property, both real and personal, to my beloved wife, Miriam L. Sanders, during her widowhood, for the purpose of educating my children in a moral and Christian-like manner. In case of my wife's marriage, it is my will that she take her third of all that I have, both real and personal, during her natural life, after which time I will it to my children. *Item* 4. I will that my children [naming them] all share equally alike in the distribution of my property, both real and personal. It is clearly my will that no account be taken of the expenses of their education as I want them all to have a good English education and then to share equally in the property. [Gives direction as to schools.] *Item* 5. It is my will and desire that in case that either of my children become of age, or marries, that my wife gives to the same on the day of marriage, or as soon thereafter as practicable, her or his portion of the property, and take a receipt for the same. *Item* 6. [Gives most absolute powers of sale to the wife, and directs whom she shall consult.]

der an "unrighteous tax-title," acquired during war, and during the absence of the owners, etc.; but, odious as it may be, and unfortunate for the owners as the circumstances are, it is clear that the demurrer to the cross-bill on the ground that there is no equity in it is well taken. Laying aside all controversy as to the fact of cross-plaintiff's interest or entire want of interest in the property, and all complaint that this claim of an interest in it is a stale demand, and now set up for the first time since 1838, as original plaintiff avers, the date of the deed to her mother, or since 1846, the date of the mother's will, which averment is met by an alleged acknowledgment of Mrs. Weir's rights by her brothers and sisters, I say, aside from all this, it seems plain that this defense against the tax-title comes too late. It should have been set up as a defense against it in the equity bill, which the supreme court of the United States decided against the Sanders devisees, and in favor of the plaintiff. If they did not know of the defense, that is their misfortune; for, having had their day in court, they cannot have another, at least not by such a proceeding as this. *Lindsley* v. *Thompson*, 1 Tenn. Ch. 272; *Welsh* v. *Harman*, 8 Yerg. 103, 110; *Nicholson* v. *Patterson*, 6 Humph. 394. This is certain as to the parties plaintiff in that suit, and it applies with equal force to Mrs. Weir, although she was not in form a party to that suit. She was represented fully and effectually by her brothers and sisters and the other plaintiffs there, who held the legal title under their mother's will and the subsequently occurring events, and were her trustees, capable of binding her to all the results of that lawsuit, if, indeed, she had any interest in the land by reason of the facts set up by this cross-bill. This is especially so as to taxes levied on the land, and which are a lien upon it, regardless of its ownership and the form of its appearance on the assessment roll. Where trustees are in possession, and have the management of the estate, they must pay all taxes and rates, and protect the estate from tax-sales. Perry, Trusts, §§ 331, 527; *Burr* v. *McEwen*, Baldw. 154. It would be an intolerable obstruction to the collection of taxes if the title, good as against the legal owner, should not be good also against all for whom he was trustee, secretly or by construction, as is here claimed, or otherwise. Again, if trustees enter into a contract without reference to their *cestui que trust*, as if they contract in their own names to purchase an estate, they may maintain or defend a suit in relation to it in their own names, although they in fact intended the contract for the benefit of the trust. If it does not appear on the face of the contract or otherwise that the trustees acted as agents, or in a fiduciary character, it is unnecessary to go beyond the terms of the contract; and in many cases it would be improper to do so. Perry, Trusts, § 874. Now, if the plaintiff, Keely, had filed a bill against the Sanders devisees, or the executors of the will, or both, or against those who purchased from them by any of the conveyances set up in the pleadings, he certainly would not have been required to make Mrs. Weir a party to bind her, if the above quotation from Mr. Perry's work be a sound enunciation of the law of the subject. No more were they compelled to make her a party, to bind her, to their attempt to protect the land from this tax-title by a bill

to have it canceled, particularly as her interest did not appear on the face of the will or the deeds; but, on the contrary, it appeared that she had been excluded especially by that will from any interest in the estate. Her interest, as she now claims it, depended on her father's will, and the alleged breach of trust, so that the interest followed the money, and it became a resulting trust, in which event it falls precisely within the class of cases where the trustees—whoever they be—represented her interest. If that bill had prevailed, she would have had the benefit of it as against Keely, and he could not have set up his tax certificate against her interest or possession. So, the bill having failed, she must likewise suffer the consequences.

We have in Tennessee a class of cases pertaining to the statute of limitations, which fix this principle in our jurisprudence, so that if the trustee do not proceed to avert the bar of the statute by suit, but allows the limitation to expire, it binds his *cestuis que trustent*, although they be under disability. *Goss* v. *Singleton*, 2 Head, 66; *Wooldridge* v. *Bank*, 1 Sneed, 296; *Williams* v. *Otey*, 8 Humph. 563; *Watkins* v. *Specht*, 7 Cold. 585. And the doctrine that all who are privies in estate are bound by a decree, although not parties in fact, is well established in this state. *Peak* v. *Ligon*, 10 Yerg. 468; *Freeman* v. *Freeman*, 9 Heisk. 301, (where a life-tenant was held to represent remainder-men, not *in esse*,) 1 Meigs' Dig. 777, § 4, and cases cited. This must be so, *a fortiori*, as to that procedure by which the state or federal government undertakes to appropriate the property by liens and sales for taxes to enforce their collection; and if, therefore, an assessment and sale against the ostensible owner be good to bind the secret *cestui que trust*, any proceeding taken to protect the property by that ostensible owner would bind him also, and, if binding in favor of the beneficiary, it is surely binding against him. Mrs. Weir, therefore, is bound by the decree already obtained by the plaintiff in the original bill in favor of his tax-title to the same extent as the ostensible owners of the land against whom she would now set up her resulting trust are bound. He has obtained by his certificate and the litigation over it the entire title, and the odium which may attach to it for any reason, justly or unjustly, cannot affect the result.

This view of the case has made it quite unnecessary to look into the character of Mrs. Weir's title as she sets it up, or to consider the other objections to the cross-bill, but they seem to me, after full consideration, quite as fatal as that just disposed of. Her father's will undoubtedly gave all the property to her mother for the management of the estate as therein directed, and she had the most absolute control and discretion. It is a close question whether its operation was not such as to vest in her an absolute title to all the estate, defeasible into a mere life-estate in one-third only upon her marriage, and subject to such merely precatory trusts in favor of the children as do not arise to the dignity of estates or property interests, except in the event of the widow's marriage, which never happened. *Anderson* v. *Hammond*, 2 Lea, 281. If that be the proper construction, it is certain that Mrs. Weir has no interest in this property, which her mother bought, took in her own name, always

claimed as her own and undertook to devise to others, especially excluding Mrs. Weir, even though she paid for it with money belonging to her husband's estate, as is alleged. If the mother took a life-estate only in the property of her husband, the result is the same as that just mentioned under the doctrine of *Vaden* v. *Vaden*, 1 Head, 444. There it was held that the life-tenant owes no duty to the remainder-men except to have the *corpus* of the estate forthcoming to answer the demand for it, just as it existed at the time the trust was created,—not at the time the life-estate falls in. And this because the life-tenant is entitled to the use, benefits, profits, accretions, and everything except the original *corpus*, as his own; wherefore, if he puts the money in property, and takes title in his own name, as he may, no trust results in favor of the remainder-man, because the property belongs to the life-tenant, and the remainder-man's only equity is to have the original *corpus* secured to him by a bill for that purpose, if it can be made to appear that the life-tenant's use need not exhaust it, and there be danger to the remainder-man. If the life-estate fall in, then the only equity is to an account for the purpose of segregating the original *corpus* from the accretions and profits which belong to the life-tenant, or those who claim under him by purchase or by will. Whether this doctrine will apply where the life-tenant is invested with a trust for the management of the estate, and with directions to allow the remainder-men to enjoy certain benefits, in the discretion of the life-tenant as trustee, may be conceded to be doubtful, if the trust fairly creates an equitable estate in the remainder-men, different from the bare remainder itself, and amounting to a share in the profits and accretions. In such cases the nature of the trust may be of that character that the right or interest of the beneficiary in the money invested definitely appears, and becomes fixed in the land as it was in the money used; but where the discretionary powers of the trustee, as in this case, or other circumstances, intervene to destroy or disturb this fixity of interest in the particular money, no trust results, and this distinction will, I believe, reconcile most of the apparently conflicting cases on the subject.

One cannot read the will of the father and not see that the mother, as trustee, was vested with such a discretion and absolute control that no claim could be set up by any of the children to an aliquot share, divided or undivided, of the money for which she sold the Maury county land, so that a trust would result in the Memphis property, which she bought, as against any legal title which, in her discretion and control, she thought essential to the interest of all concerned to acquire, or to devise, or to sell. The most that could be asked would be a settlement of the entire trust from beginning to end against her or her devisees under the will. And from the allegations of the original bill it appears that a suit of this kind was had in 1853, to which Mrs. Weir was a party, and resulted in a settlement leaving the *status* of the land as Mrs. Sanders, the mother, had left it by her will, although the bill prays for its sale. Here was another opportunity more than 30 years before this bill was filed to set up this resulting trust, if it existed. But we need not go critically into the effect of that suit upon her claim here, because it is immaterial whether

a suit to settle the trust was brought or not; she had a right to bring it, and it was the only right she had. Certainly this kind of a trust does not follow the land into the hands of her mother's devisees, or strangers who buy of her or them at tax-sales or otherwise, but would rather attach to the money which should be the proceeds of such sales, if at all. Moreover, one cannot read the mother's will and not see that by it she was endeavoring to carry out her discretionary powers; not, probably, declared and fixed trusts over the estate, as she understood them, and properly understood them, perhaps. Mrs. Weir, the cross-plaintiff, by her counsel, assumes that the part of the will which states, in cutting her off with a shilling, as it were, that by her marriage and in her education she had received her equivalent to that which was being bequeathed and devised to the other children, proceeds upon the notion that her marriage itself furnished this equivalent in its advantages derived from her husband. But this is not a necessary inference from the language used, and may be a wholly gratuitous assumption, for, as counsel on the other side says, if you interpret this language of the mother's will by the language of the father's will, and the mother's evident purpose to keep it in mind, we may more rationally assume that she had discharged her duty and the trust as to Mrs. Weir by giving to her in her education and at her marriage her full share of the trust funds. The cross-bill is silent as to the facts on this subject, and we do not know what they were, but we surely cannot alone on the language of the will of the mother assume them to be in Mrs. Weir's favor. Certainly, in any view, no trust results in the land, because there is not found to exist that most essential feature of such a trust,—the fact that money to which the alleged beneficiary was clearly and unequivocally entitled purchased the estate. The original deed, made more than 50 years ago, states the consideration to have been $500, and of that sum the cross-plaintiff does not distinctly show that she was entitled to one cent; for it does not appear but that elsewhere in the management of the trust she had received her full share, as her mother's will assumes she had; and there is not any allegation of a state of the trust then existing to show that she was entitled to a share of that particular money. It is a delusion to base a claim for a resulting trust on such a state of facts.

Yet, again, this claim would seem to be a stale one. If the cross-plaintiff's money went into this land, it was 50 years ago, and she is just now setting it up. If the adverse claim commenced with her mother's will, that was in 1846, more than 40 years before this cross-bill was filed. She avers that her brothers and sisters recognize her claim,—and well they may now, since they have lost their own claim through the tax-title and their own bill to have it canceled,—but this will of her mother's not only did not recognize it, but especially cut her off from it; and they claim under that will, as do all purchasers from them. Her brothers and sisters did not join her in their bill against Keely attacking the tax-title, presumably because they supposed she had no interest, and it is a delusion again, in my judgment, to suppose that because Keely has not had actual possession under his tax-title more than seven

years, that he can be proceeded against on this stale claim of a resulting trust, any more than the mother could be if she were living, or the brothers and sisters if they were parties to this bill, as they are, some of them. Whatever protects them in a court of equity on the ground of staleness of demand, protects purchasers from them, whether by tax-title or otherwise. The cross-plaintiff assumes that Keely's possession under his tax-title commenced only in 1880, less than seven years before the bill was filed, and, not being barred by the statute of limitations, the argument is that the demand cannot be stale as to him. Perhaps his possession would be held commensurate with his tax-title, which he acquired in 1864. As to part of the property, he is alleged to be in possession now, and we are asked to treat him as an adverse holder only since his possession commenced; and as to another part the pleadings allege on both sides that it was a common until the struggle for possession which produced this bill commenced. Under such circumstances it cannot be assumed that his possession is recent, to avoid the staleness of this demand, because, if for no other reason, his possession attaches itself to that of those whose title he acquired; and the averment of the cross-bill that they recognized Mrs. Weir's claim cannot avail, being only a conclusion or opinion expressed against the will of Mrs. Sanders, denying Mrs. Weir any interest, and the conduct of the brothers and sisters in claiming it to her exclusion by not joining her in their bill against Keely. If they did not join her because they recognized her claim, then they were suing in her behalf, and she is bound. This cross-bill is an instrument of defense to the original bill; and while, if it were itself an original bill, these defenses could not be made, perhaps, or all of them could not, possibly, by the demurrer, but by plea or answer only, yet the plaintiff's original bill sets them up by pleading the former decree as a source of title, or as settling the title, and the averments of the cross-bill, taken along with the averments of the original bill as to that suit,—and they are not denied,—make the record show upon its face the estoppel upon which the original plaintiff relies, and he need not therefore plead it. Demurrer sustained.

